This church houses a study of John Paul II and Carsten of John Graymore, who grew up at the hereside of the city walls in early 7th century.  Next case is Pods v. Port-A-Store, 06-1504. Mr. Dutkiewicz, I understand you are going to argue from there. Are you connected with the microphone for our recording purposes? Mr. Dutkiewicz, there is an old statement that some people say that the quality of an appeal is inversely proportional to the number of issues raised. You have raised ten issues, sort of a shotgun appeal with a variety of procedural issues, which usually aren't reversed, and a novel one of failure to prove that the maintenance fees are up to date on one that is just a matter of public record. What is your prime issue that you think you can win on? My prime issue is the claims to destruction record. First of all, we felt that a marked hearing should be had. Could you help me understand what happened here? As I understand it, the argument that you made with respect to Claim 29 was that there was only a claim of literal infringement of Claim 29. There was no evidence of doctrinal equivalence infringement. Is that correct? No. Paz argued that there was literal infringement. They never argued that there was doctrinal equivalence. We are saying the same thing. So with respect to Claim 29, the issue is literal infringement, and you argue with respect to that that the claim should require a rectangular frame that goes all the way around, right? Correct. Now, with respect to Claims 1 and 32, the District Court also granted Jane Wall of infringement with respect to those two claims, correct? The District Court, I don't think, was very clear as to which claims exactly. Yeah, he was pretty clear. He said 1 and 32. With Judge Steik, I assume that means he must have found doctrinal equivalence as a matter of law? Infringement under the doctrine of equivalence as a matter of law? You're opposing counsel shaking his head, yes? Okay. My reading of the record is that there was a general assumption that Claim 32 from the standpoint of doctrinal equivalence was pretty much the same as Claim 1, perhaps combined with Claim 5, right? So the Claim 32 wasn't really separately addressed at any length in the testimony. Well, Claim 32 has essentially the same descriptive clauses that were present in Claim 1. In particular, the last clause of Claim 32, which is where the carrier frame is capable of being elevated and moved around the container, over a container is capable of being lowered around the container for attaching a carrier frame. That issue, I believe, is what the word around means. That's really what this— Well, also carrier frame. Well, carrier frame is another issue. Around is used as a preposition in both of these cases. And the court applied it as an adverb in which when one moves around in a crowd, it means on several sides. But when one moves around the house, one moves all the way around the house. But if the judge was correct as to Claim 1, that there was infringement under the doctrine of equivalence of a four-sided carrier, then it doesn't really make any difference whether it was incorrect in its claim construction on Claim 29. Correct? If there was infringement of any one claim, correct. However, once again, the word around appears both in 29 and in 33 and in 1. And this is the word that really was changed during that prosecution. So if I understand you correctly, your argument with respect to Claim 1, and by inference with respect to Claim 32 also, that there can't be any doctrine of equivalence infringement because there was a prosecution history estoppel. Correct. The statements made by the patentees before the patent office in that they raised a two-step pattern, which was essentially a double rectangular frame that sat on either side of the container and looked at it. And they combined that with a container that went around the container but below it. And so the patentees, in response to the office action, said, well, ours is a single rectangular frame that can go over and around a container. The patentees even contend, or thought contend, that in Claim 1, the word around the container means on all sides. However, this report said, well, that's just Claim 1, and Claim 29 is a different claim, so I'm going to construe that word. It can be on several sides. Our position is that because of the patent prosecution and because of the statements made at the patent office, the word around is only limited to the meaning on all sides. And I believe there was a case decided by the Federal Circuit, Alturas v. Symantec, which said that intrinsic evidence shows that the patent distinguished the term from the prior artifice in the case of a particular embodiment. Expressives claim subject matter describe a particular embodiment as important to the invention. What happened is the patentees, in differentiating their claim from the prior art, said, well, ours goes on all sides. It's a single rectangular frame, and the only rectangular frame that's available is in one of the views from the planner view, looking down to see that there's a rectangular frame on the project whereas that must go on the container on all sides of the container. Why didn't you ask the trial judge to construe the term carrier frame as it was used in Claim 29? Carrier frame is a useless function clause. Now, the court did not describe it. It doesn't say. I mean, I'm not even sure how you get there. I mean, carrier frame, I mean, why couldn't you just construe carrier frame in light of the patent, the specification, the prosecution history? How do you get it to be? It doesn't say. There's no reference to the word means. It doesn't say that it's a means plus function. There was no structure given in that avenue. Now, there's a presumption of means plus function if the word means is used. However, that's a presumption to be overcome. Let's assume we reject that. What about Judge O'Malley's question? Did you ask the carrier frame be construed to be four-sided? In our argument to the court, we said that it had to be four-sided because of the amendments made during the prosecution history. So you're saying that by reference to the word around, you're sort of backing into a construction of carrier frame? Well, I think the attorneys were very clear. They said they had a single rectangular frame. Our client has a three-sided frame that is not rectangular. Doesn't claim one say a carrier frame including right and left longitudinal elements? They're describing, yes, they're describing right and left longitudinal elements. But when they said it goes around the container, they introduced the definition meaning on all sides, which they had to do so. You don't think right and left longitudinal elements? If you look at Doucette, Doucette also had right and left longitudinal elements. Look at the drawings of Doucette. I suggest that the court should make the distinction that longitudinal elements must not have the word L or horizontal. If you look at Doucette from A, it has transverse elements that extend. It has longitudinal elements that go up and down. It has vertical elements. It has all the elements. It does all the things that 1029 says it does, except it doesn't go around the container. In our analysis of it shows that it does all the things. But when I wrote the application, it said it goes around the container from the very start. And so, unfortunately, that analysis doesn't say, well, this is close, but it doesn't go around the container. It just assumes that one of them is in there for a reason. And that's why 1029 would be allowed without amendment. And yet, when the same word allowed is put in plain language with the jacket, then what is that word? So under the Alterra's court, I would suggest that the definition was then given up for all the other things that are allowed to put in and just limited to that which goes all the way around the container. Could I ask you a question about the invalidity issue? As I understand it, you don't raise anticipation on appeal. Is that correct? Well, one of the issues was that no evidence was allowed by anticipation. Well, I'm not sure that the district court was ruling out Stern's testimony on anticipation, but that's a different question. In any event, you're not raising the anticipation issue here on appeal. No. And on the obviousness question, even if one assumes that the district court was incorrect in saying that your expert had to address secondary considerations, there's still a problem of lack of testimony by Stern about motivation to combine. I think the motivation to combine is inherited from the list systems. If you look at all the list systems, see, there was prior argument and there was unreference prior to the court. When we had the Markman informal conference, at the end of the conference, the judge said, well, I think I'm just going to go ahead and render an opinion. And I suggested that there was unreference prior argument. He had not seen yet that it would come out in Markman here. And that was the end of that. I did not hear anything more about the unreference there. Let me ask you about the obviousness, though. You say that the problem is that he excluded Stern, and so therefore you had no other evidence of obviousness that you could submit. But I looked at Stern's report, and I don't see anything in his report where he expresses an opinion on obviousness. His opinion is solely on infringement. I think on the excluded report, it did address obviousness. I couldn't find it. It's not the same as that, as his. You did, of opinions he would express, and you said opinions that he expressed in his deposition. So my question is, did he ever express those in an expert report? It was expert testimony that was excluded. Okay. So he would have been your only evidence of obviousness? Or did you also then go ahead and submit this other prior art? Did you attempt? That there was nothing teaching the combination of vehicles and lift systems as prior shortcomings in the 06-16s. Namely, one of the earlier arguments, two, three, or four-sided frames. All devices somewhat accounted for on the original slide. We didn't identify them, but frankly, they are. Transferring vehicle. That's not true. The older patent is almost identical to my client's device, which is the 218 patent, which was cited in the briefs. If you look at that and look at a picture of my client's device, my client's is an improvement, a subtle improvement, of that old patent. But older was 30 years old. All of these things cited in non-reference patents have to be 400 pages of text. And all of them have to do with transport vehicles and routes and trains and ships and trains. So they're all associated. Was obviousness only a defense or was it asserted as a counterclaim as well? There's no answer in the appendix. It was a defense. Okay, so you didn't actually ask for a declaration of invalidity on obviousness grounds. I believe in the allegations, there was an allegation of invalidity on obviousness. As a defense only. We'll save the rest of your time for rebuttal, if you like. Mr. Ahn. May it please the Court? This is a case in which a party intentionally sought out to copy all aspects of another successful business. This doesn't seem to have much to do with it. How could the District Court possibly have granted Jane Wall on the Doctrine of Equivalence? Let's start there. There seems to be conflicting testimony about the Doctrine of Equivalence. In our brief, we cited case law in which rulings as a matter of law have been granted by the infringement under the Doctrine of Equivalence. No, but how about in this case? I mean, why is it that there wasn't conflicting the possibility of an adverse jury verdict on the Doctrine of Equivalence? How could that be? Well, given the substantial weight of the evidence regarding the equivalence of the four-sided carrier frame and the three-sided carrier frame of Porter Stone, the Court found as a matter of law infringement. What about prosecution history estoppel? I don't believe prosecution history estoppel limits the scope of the claims as asserted by Porter Stone. Why not? Let's step back for a moment. You agree that the Court granted Jane Wall on Claim 29 finding it infringed literal, right? Not Doctrine of Equivalence, correct? Yes. So we've got a claim construction issue there. With respect to Claims 1 and 32, it's only Doctrine of Equivalence, correct? That's correct. All right. So with respect to Claims 1 and 32, why doesn't the prosecution history preclude a finding of equivalence? Because in the prosecution history, PODS never gave up coverage of the three-sided carrier frame. But the applicant made the statement that the Doucette reference clearly lacks the teaching of the singular rectangular-shaped frame, i.e., that's what was being claimed. That's correct. With respect to Claim 1, Claim 1 is an apparatus claim which expressly recites a four-sided carrier frame. Claim 29 is a method claim. So do I understand you to be saying in response to Judge Lurie's question that you agree that there was prosecution history estoppel with respect to Claim 1? With respect to Claim 1, I submit that you don't even have to get to prosecution history estoppel. It recites a four-sided frame. No, no, no. We're talking about the Doctrine of Equivalence. Oh, the Doctrine of Equivalence. You agree that that's the basis for the district court Jane Wall ruling with respect to Claim 1 was Doctrine of Equivalence. That's correct. In the light of what Judge Lurie just read to you, how could the district court find equivalence with respect to Claim 1? Claim 1 recites a four-sided carrier frame, but under the Doctrine of Equivalence, the evidence at trial through our expert, compared in his expert report and at testimony at trial, explained that the function may result. Yeah, yeah, that's a different question. We're talking about prosecution history estoppel here. Judge Lurie just read you a quote from the prosecution history which seems to disclaim something that didn't have a four-sided carrier frame. With respect to Doucette? Yeah. That statement was made to distinguish. Doucette has two end-fitting portals, and that statement was meant to distinguish over Doucette in that it wasn't a singular frame such as Paz's device. I'm not following what is unclear about what was said in the prosecution history. The patentee construed his claim in the prosecution as referring to rectangular, which is his definition of a round. QED is not over. With respect to Claim 1? With respect to both. With all due – well, if I may, with all due respect, I believe that this argument was never raised below at all. It was never considered by the disreport. So as an initial matter, I don't believe it should be considered now for the first time on appeal. In fact, I'm sure of it. Forrester never made this argument at the trial level below, not once. And not once was it – certainly it was not addressed in any briefs and was never considered by the disreport at any time. I don't say it in my brief because – No, I'm saying I don't say it because they never raised the point. We never responded. I believe they raised it with respect to Claim 29. I don't believe they raised it with respect to Claim 1 under the doctrine of equivalence. I believe they raised it with respect to the literal infringement of Claim 29. That's been their theme all throughout this case, to read in the foresighted structural limitation of Claim 1 into method Claim 29. But isn't the real problem here is that the trial judge never conducted a claim construction process or never went through the process of those things like whether or not something was disclaimed in the prosecution history, issues that relate to what the specifications really call for. Those were never fully developed in the record. The trial judge just kept jumping to conclusions, deciding he was going to rule as a matter of law and claim after claim after claim. I respectfully disagree. In this case, there was an extensive claim construction process. It started out with the parties exchanging claim construction positions and then having a joint claim construction statement that was submitted to the disreport. Sometime afterwards, a hearing was scheduled, a lengthy hearing in which the parties were ordered to identify and discuss any and all claim terms in dispute. After that, Porter Star continued to raise new claim construction arguments. Thus, the court ordered supplemental briefing. After that, the court issued its mortgaging. So it gave the parties every chance to identify any and all claim construction issues it had. Thus, when we got to trial, Porter Star continued to introduce new claim construction arguments, such as what Mr. Duke was referring to, the term carrier frame, allegedly being part of a means plus function claim or some sort of step plus function clause. That was brand new. We heard of that for the first time at trial, and therefore the disreport precluded those arguments. Those are the very arguments it now raises on appeal, the arguments which the disreport refused to hear because they were raised for the first time at trial. Those new arguments include both its non-infringement arguments with respect to the gasoline argument, that the gasoline engine should be read into all the claims, with respect to Claim 29, the step plus function, saying that the force added frame of the specification should be read into the claims. Those are brand new claim construction arguments which were never raised until the day of trial. So putting aside the step plus function, because I don't think any of us really believe that's what we're looking at here, how do you interpret Claim 29 without giving a definition to carrier frame? The parties don't dispute the term. What it generally means is it's a frame for carrying containers. What the parties dispute is – I'm sorry, I don't think I'm answering your question. To answer your question, Claim 29 is a method claim. The structure of the frame is not recited. Therefore, any apparatus that would carry something would literally satisfy, we believe, the limitations of method Claim 29. Depending upon what around means. If around means something for Claim 1 purposes, why doesn't it mean the same thing for Claim 29? Well, we believe that around does mean the same for 1 and 29. Notwithstanding the prosecution argument. It's our position that around means on all or various sides. Now, with respect to Claim 1, it's a four-sided frame, so it goes around all sides of the container. With respect to method Claim 29, there's no structure recited. Why is it clear that Claim 1 means four-sided beyond the interpretation of around? Because Claim 1 expressly recites front and rear transverse elements and left and right longitudinal elements. It defines the four sides of the carrier frame. Claim 1 being an apparatus claim, Claim 29 being a method claim recites no structure at all. Doesn't Claim 29 actually refer specifically to the end pieces of the carrier frame? It may, but it certainly does not define the four-sided structure. So you're saying that it could basically be Doucette. The two end pieces and that's it? I believe the way it's written, it could not be a reference such as Doucette.  Well, notably, the other limitations about the steering and mobility means, combined with the other limitations, we think would certainly take it out of the scope. But if you combine the concept of around with the fact that it specifically recites end pieces, then how do you not have a four-sided carrier? I'm sorry, is your question giving that the term? Well, your argument is that around could mean three sides, exactly what the allegedly infringing device has here. But yet you recite specifically the existence of end pieces in Claim 29. If you could just refer me to the end pieces you're referring to. I think it's the second or third. Not surprising, it's hard to find. You've got 30 steps there. Everything but the day of the week in which the invention was made. The second or third step, isn't it? Where the end pieces move to the ground. Does it use the word end? I'm sorry? It's the second or third step. I'm trying to find your patent here, sorry. You have it right there? I have it in front of me. Okay. Well, we would hope you would understand your claim. You could point it out to us. I don't recall any recitation of ends. Are you referring to the rear and front upright members? I don't believe the word ends are in this claim at all. All right, you keep going, I'll find it for you. But how can there be rear and front upright members if you don't have a four-sided? If you have rear and front, that implies they're not connected. Therefore, to connect them would require two more sides. Correct, but that would not necessarily make it four-sided. Really? Rear and front plus two more? Yes. I learned two and two equals four. Long habit. For example, you can have two longitudinal elements, and you can have a C-shaped, a U-shaped structure in which there are both front upright members and rear upright members. And you would be missing a transverse element, so you would have a literally U-shaped structure, which would be a three-sided frame. You mean one more side? A longitudinal side would be absent a frame? No, no. Well, in this case, what we're saying is that there would be a transverse element missing. You'd have two longitudinal elements. Well, why wouldn't it fall off then? I mean, realistically. In fact, Quarterstar's device is exactly like that. It's a three-sided U-shaped frame, and the container certainly doesn't fall off. But it misses the end piece, not the side piece. It misses the transverse element, yes. I'm not exactly sure what you're referring to when you say end piece. Right now, I'm referring to the front and rear transverse elements. One of the transverse elements are missing. I'm still having trouble with Claim 29. It uses the term carrier frame. In the prosecution, you distinguish the prior art on the ground that the prior art did not have a four-sided carrier frame. And it wasn't, therefore, a round. So why doesn't the prosecution history tell us to interpret carrier frame in Claim 29 the same way that it's interpreted in Claim 1? And there are plenty of cases saying that the same term is supposed to be interpreted the same way in different claims. Sure. It's because Claim 29 was never rejected over any prior art reference, nor was it amended to include it. I mean, so what? And we still look to the prosecution history as to the meaning of terms like around and carrier frame. Now, we submit that those comments were made in the context of Claim 1. In Claim 1, we say the four-sided frame distinguishes over two set. That was the context in which it was made. They're all based on the same specification. Yes. All right. Thank you, Mr. Rahn. Mr. Dutkiewicz has a little time left, if you have any response. If I could, the word around, as I said previously, was made during the prosecution history, which was made to mean one thing, meaning all sides. I think the fact that that word appeared in Claim 29 was the reason why Claim 29 was allowed, because it differentiated itself from two set right then and there. And so two set could not be raised as a reference, because it did not go around. It was on both sides. You said it does have, if you look at the drawings, it has all the elements. It has the cross-section, it has the transverse elements, it has the vertical members, it has the posterior things. If you look at the wheels, if you look at the cycling, you'll see that it does exactly what the four-star or the pod set does, except it doesn't go all the way around. So the word around was added to Claim 1, but it wasn't necessary to add it to Claim 29, since it was already there. Exactly. Do you agree with Mr. Ahn that you never raised the issue of prosecution history estoppel as it relates to the use of the doctrine of equivalence, no matter which claim we're looking at? In other words, he says you only recited to prosecution history for purposes of your interpretation of the word around, but did not raise prosecution history estoppel as a defense, essentially, to the application of the doctrine of equivalence. We didn't exactly rely on claims construction, because we felt that the word around alluded to those things that went on all four sides of a container, which a four-star device does not do. So it was not raised in the context of the doctrine of equivalence, although there was testimony by Dr. Stern that, in the context of one, that there was no equivalence between an open-sided frame and a rectangular frame and the two were different structures. So that, at least in the long-term project of the jury, the district court will do that more. If I could just touch on one other thing, which we raised in the district court, as to the issue of enforceability. Enforceability is essentially an end product. I don't think that's a rebuttal comment, and your second argument is limited to rebuttal. So we'll take the case under advice, and thank you very much. All rise. The honorable court is adjourned until this afternoon at 2 o'clock p.m.